UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JULIUS SCARLERCIO,

                   Petitioner,           <u>MEMORANDUM & ORDER</u>
                                          05-CV-1770 (JS)
       - against -                  07-CV-2458 (JS)
                                        09-CV-1248 (JS)

W. MAZZUCA,

                   Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:       Julius Scalercio, <u>pro se</u>
                      02-A-2639
                      Bare Hill Correctional Facility
                      Caller Box 20
                      181 Brand Road
                      Malone, NY 12953

For Respondent:      Edward A. Bannan, Esq.
                      Office of the District Attorney
                      County of Suffolk
                      200 Center Drive
                      Riverhead, NY 11901

SEYBERT, District Judge:

       Petitioner Julius Scalercio ("Petitioner") commenced suit seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner then filed a Complaint under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 seeking declaratory relief. These actions have now been consolidated into this docket, 05-CV-1770, and there are numerous motions pending. For the foregoing reasons, Petitioner's motions to amend his habeas Petition are GRANTED, but his Petition itself is DENIED, and his Complaint is DISMISSED <u>sua</u> <u>sponte</u>. Petitioner's remaining motions, which seek discovery, a preliminary injunction, and a temporary restraining order, are DENIED AS MOOT.

In November 1999, Petitioner conspired with Gregory Briones ("Briones") to conduct a home-invasion style robbery at a residence in Brookhaven, Suffolk County. Armed with a shotgun, Petitioner intended to gain access to the home by impersonating an IRS agent, presenting the home's residents with a fraudulent IRS badge and search warrant. The police thwarted Petitioner and his co-conspirators before their robbery plans reached fruition, arresting him.

On April 15, 2002, during the middle of his criminal trial, Petitioner pled guilty to Attempted Robbery in the First Degree, Attempted Robbery in the Second Degree, Attempted Burglary in the First Degree, Criminal Possession of a Weapon in the Third Degree, Attempted Criminal Impersonation in the First Degree, Conspiracy in the Fourth Degree, and to violating probation (the probation having resulted from a prior offense). Petitioner was informed that, if he pled, he would be sentenced to 10 years for the indictment's counts, 2 1/3 to 7 years for violating probation, and to a post-release supervision period of 5 years. (Plea Tr. 128). Petitioner indicated that he understood the proceedings and the consequences, thereof. (<u>Id.</u>). Petitioner indicated that he received no other promises as a condition for pleading guilty, other than that his sentences would run concurrently. (Plea Tr. 128-29). Petitioner then agreed to waive his rights to a jury

trial, confront witnesses against him, testify on his own behalf, call witnesses on his behalf, and "any and all basis [he] may have for an appeal, and any and all appellate rights." (Plea Tr. 129-31).

On April 29, 2002, the New York Supreme Court, County of Suffolk, sentenced Petitioner for the various offenses to which he pled guilty, with the sentences to run concurrently, and the longest sentence lasting 10 years. (Sentencing Tr. 5-7). But despite New York Penal Law § 70.45's requirement that Petitioner also be sentenced to post-release supervision, the Court neglected to do so. Petitioner, however, was re-sentenced on August 1, 2008. His new sentence did not modify his prison term but did include a five-year-period of post-release supervision.

On September 20, 2004, the New York Appellate Division, Second Department, affirmed Petitioner's conviction. See New York v. Scalercio, 10 A.D.3d 697, 697-98 781 N.Y.S.2d 745 (App. Div. 2004). The Court concluded that Petitioner's guilty plea was knowing, intelligent, and voluntary, and that by pleading guilty, Petitioner had "forfeited appellate review of his nonjurisdictional challenges to the indictment" and "his claims of ineffective assistance of counsel, which did not directly involve the plea-bargaining process" Id. In addition, the Court found that, by waiving his right to appeal, Petitioner waived the right to challenge his sentence as excessive. Id. On October 28, 2004, the

New York Court of Appeals denied Petitioner leave to appeal the Second Department's decision.  See 3 N.Y.3d 742, 786 N.Y.S.2d 821 (Table).

On April 8, 2005, Petitioner commenced this Petition under 28 U.S.C. § 2254. Petitioner originally sought § 2254 relief on the grounds that: (1) the grand jury that indicted him was improperly empaneled and given inadequate legal instructions; (2) he was "not guilty" of what he pled guilty to; (3) his right to a fair trial was violated when the New York Supreme Court, Suffolk County, denied his motion for a change of venue; (4) counsel was ineffective because counsel (a) failed to raise valid arguments in his defense, (b) failed to sufficiently cross-examine witnesses, and (c) had supposed conflicts of interest and irreconcilable differences; (5) his guilty plea was obtained by "fraud, trickery, deceit, and coercion"; (6) his sentence for violating probation exceeded the proper term provided by the "pre 9-1-98 sentencing guidelines"; (7) he was denied his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment Rights under the United States Constitution, and similar rights under the New York Constitution; (8) his plea was unintelligent because he did not know all the consequences of his plea--the period of post-release supervision in particular; (9) post-release supervision is unconstitutional because it results in a defendant being sentenced twice for the same offense; (10) he was

denied a right to appeal;[1] and (11) that the New York Statute providing for post-release supervision is unconstitutional because it supposedly violates numerous federal and state constitutional protections, including protections from double jeopardy and cruel and unusual punishment.[2] Among other things, Petitioner alleges that his August 1, 2008 re-sentencing was unconstitutional because the Court modified his August 29, 2002 sentence to add a period of post-release supervision. Petitioner further argues that he was not informed that post-release supervision would be part of his sentence, and would not have pled guilty if he had known. And Petitioner argues that N.Y. Penal Law § 70.45, which provided for his post-release supervision, violates the separation of powers doctrine by entrusting judicial functions in a non-judicial

---

[1] For the sake of readability, the Court has rephrased and reordered the various grounds Petitioner asserted, combining related grounds while construing his Complaint liberally to identify grounds that were not pled precisely (i.e., actual innocence).

[2] This last alleged basis, which according to Petitioner, justifies habeas relief, comes from his many filings after the filing of his original Petition. Since filing his original Petition, Petitioner has filed numerous additional pleadings, including, but certainly not limited to, his June 15, 2007 commencement of a new action (07-CV-2548) seeking a writ of habeas corpus and his April 4, 2008 purported amendment to this new petition (without seeking leave of the Court). By this Court's September 24, 2008 Order, Petitioner's new action was consolidated into his original case (05-CV-1770), and his new petition was construed as a motion to amend. Meanwhile Petitioner sought to amend his original petition on December 19, 2007. Petitioner then followed these purported amendments with numerous letters to the Court which he asserts provide supplementary authority for his legal positions.

officer, and by constituting a bill of attainder.  Finally, on March 23, 2009, Petitioner filed a Complaint, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, seeking a declaratory judgment holding that New York Penal Law § 70.45 is unconstitutional as applied to him.

The Court addresses each of Petitioner's arguments, in turn.

<u>DISCUSSION</u>

I.  <u>Federal Habeas Review of State Convictions</u>

Petitioner filed this action after the April 24, 1996, effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Accordingly, the AEDPA's provisions apply to his case.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 402, 120 S. Ct. 1479, 1518, 146 L. Ed. 2d 389 (2000).  Under the provisions of 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court."  <u>Cotto v. Herbert</u>, 331 F.3d 217, 231 (2d Cir. 2003).

"A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment."  Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations and quotations omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision."  Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal citations and quotations omitted).  A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent."  Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (internal quotations and citations omitted).  A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Penry, 532 U.S. at 792.  Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be

7

unreasonable." <u>Williams</u>, 529 U.S. at 411.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1). As a result, Petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence."  <u>Id.</u> This is "particularly important when reviewing the trial court's assessment of witness credibility."  <u>Cotto</u>, 331 F.3d at 233 (internal citations and quotations omitted).

II.  <u>Petitioner's Grand Jury Claims</u>

Petitioner first argues that the Grand Jury that indicted him was improperly empaneled.  Petitioner, however, had no federal constitutional right to a grand jury.  <u>See</u> <u>Cobbs v. Robinson</u>, 528 F.2d 1331, 1334 (2d Cir. 1975) ("the States are not constitutionally required to use grand juries");  <u>Velez v. New York</u>, 941 F. Supp. 300, 315 (E.D.N.Y. 1996) ("there is no federal constitutional right to be indicted by a grand jury prior to trial in a state criminal action").  At most, Petitioner had a right that any grand jury that New York chose to empanel complied with federal constitutional standards--such that his rights to Due Process and Equal Protection were protected.  <u>Cobbs</u>, 528 F.2d at 1334.  But Petitioner's complaints concerning the grand jury which indicted him do not concern such federal rights--such as his right to not have potential jurors excluded due to their sex, race, religion or national origin.  Instead, they concern rights that Petitioner may

have under New York state law--such as an alleged failure to afford Petitioner the right to testify before the grand jury, and the allegedly insufficient evidence that the jury used to indict. (See Pet. at ¶¶ 1-11.) Thus, Petitioner lacks a federal habeas claim concerning these grand jury proceedings. See, e.g., Velez, 941 F. Supp. at 315; Simpson v. Conway, No. 03-CV-0555, 2009 WL 2151897, at *2 (W.D.N.Y. July 16, 2009) (issues concerning state law grand jury process "not cognizable on federal habeas review").

## III. Petitioner's Actual Innocence Claims

Petitioner also claims he was actually innocent of several, or all, of the charged offenses. A guilty plea, such as Petitioner's, is subject to collateral attack if it can be shown that the plea "has probably resulted in the conviction of one who is actually innocent." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). In this regard, actual innocence means "factual innocence, not mere legal insufficiency." Id. In addition, Petitioner must demonstrate that "it is more likely than not that no reasonable juror would have convicted him." Id. On a collateral attack, an actual innocence claim requires a Petitioner to put forth "new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000) (citations and quotations

9

omitted).  This standard "nevertheless remains the same" when a petitioner pleads guilty instead of proceeding to a jury verdict. Id.

Here, Petitioner points to no "new reliable evidence," or, for that matter, any new evidence at all.  Instead, Petitioner challenges his guilty plea based on facts indisputably available to him when he chose to plead guilty.  Specifically, Petitioner alleges: (1) he could not have "attempted" to commit a robbery or burglary because he was arrested 30 miles away from where the attempt would have taken place, and "in fact no offenses occurred" (Pet. at 5-6); and (2) the criminal weapon possession, attempted criminal impersonation, and conspiracy counts were "defective" because Petitioner did not "possess" a weapon within the meaning of New York's Penal Law, and his arrest resulted from "entrap[ment]." Because Petitioner has not put forth any "new" evidence that shows his factual, actual innocence, this claim is DENIED on that ground.

Even assuming arguendo that Petitioner could obtain habeas relief based upon "actual innocence" even without "new" evidence, his claim would nevertheless fail.  Indeed, the Court is baffled by Petitioner's suggestion that he could not commit the crime of attempt simply because the actual crime never occurred and he was arrested far from the crime's planned location.  Under New York law, a person is "guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to

10

effect the commission of such crime." N.Y. C.P.L. § 110.00. Here, as Respondent's brief sets forth, there was overwhelming evidence that Petitioner acted to "effect the commission" of a robbery-- including devising the plan to commit the robbery by posing as IRS agents, and providing a co-conspirator with a shotgun to be used in the crime. Resp. Br. at 8-9.

Similarly, Petitioner argues that he did not engage in "criminal possession" because he was only a passenger in the vehicle where the weapon was recovered. But this argument fails, for several reasons. First, Petitioner himself gave co-conspirator Briones a shotgun, and thus possessed it prior to giving it to him. Resp. Br. at 8. Second, criminal possession of a weapon need only be "constructive," through "the exercise of dominion or control over the weapon." 6 N.Y. PRAC., CRIM. LAW § 33:8. Even if the jury completely disregarded Petitioner's actual possession (i.e., giving the shotgun to Briones), the jury could still have found that-- given the circumstances--Petitioner "constructively" possessed the weapon recovered by police. It is, of course, possible that the jury would have acquitted Petitioner on this count. But, by pleading guilty, Petitioner forfeited his right to have such a determination made. And Petitioner has set forth no evidence suggesting "it is more likely than not" that the jury would have acquitted him. Lucidore, 209 F.3d at 114.

Petitioner's entrapment claim is completely conclusory.

Even if the AEDPA did not procedurally bar it, the claim would be denied. Likewise, Petitioner's actual innocence challenges to the Attempted Criminal Impersonation and Conspiracy counts are also completely conclusory. Petitioner sets forth nothing at all to suggest his actual innocence of these charges.

IV. Petitioner's Fair Trial Claims

Petitioner also argues that he was denied a fair trial. Petitioner argues: (1) the Suffolk County District Attorney's Office should have been "disqualified" from prosecuting him because one Suffolk County A.D.A., Georgia Tischember, is related to Petitioner's intended victims; and (2) the trial court justice, John Copertino, improperly "influenced" the Appellate Court's decision to deny his appeal of his change of venue motion. Both these arguments are completely without merit.

With respect to (1), Petitioner points to no "clearly established Federal law, as determined by the Supreme Court of the United States," stating that an entire district attorney's office is "disqualified" from prosecuting a criminal, simply because that criminal sought to harm relatives of one of the office's A.D.A.'s, even though that A.D.A. had nothing to do with the resulting prosecution. 28 U.S.C. § 2254(d). And, with respect to (2), Petitioner puts forth no evidence of any improper influence. At most, Petitioner notes only that Justice Copertino used to serve on the Appellate Division, Second Department, and states that he

"feels" Justice Copertino's prior service enabled him to exercise improper influence. (Pet. at 9). But Petitioner's subjective "feelings" are insufficient to demonstrate that he was denied a fair trial, and there is no "clearly established Federal law" that required New York to transfer Petitioner's appeal outside the Second Department.

V. <u>Petitioner's Ineffective Assistance of Counsel Claims</u>

Petitioner also argues that his counsel was ineffective. Specifically, Petitioner alleges that his counsel (1) "failed to raise valid arguments and defense [sic]," (2) failed to "[t]horoughly cross-examine witnesses and forcefully challenge prosecutorial evidence and allegations[,]" and (3) improperly prejudiced him by informing the Court that Petitioner would plead guilty against his wishes.[3] (Pet. at 9). Petitioner further alleges that his trial counsel had "conflicts of interest" to his representation. (Pet. at 9). Once again, these arguments are frivolous.

As an initial matter, Petitioner pled guilty. Thus, he can maintain an ineffective assistance of counsel claim only "to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." <u>United States. v. Arteca</u>, 411 F.3d 315, 320 (2d Cir. 2005). Here, none of the alleged conduct concerned plea

---

[3] Subsequently, Petitioner changed his mind and pled.

negotiations or Petitioner's ultimate decision to plead guilty. Thus, by pleading guilty, he waived any ineffective assistance of counsel claim he might have had.

But even if no such waiver occurred, Petitioner's ineffective assistance of counsel claims still fail. Petitioner does not even attempt to explain what "valid arguments and defense [sic]" his counsel could have raised, or how his counsel could have "cross-examine[d] witnesses and forcefully challenge[d] prosecutorial evidence and allegations" more than he did. Nor does Petitioner explain his counsel's supposed "conflicts of interest."

At most, Petitioner claims that counsel should have been relieved after he supposedly pled guilty on Petitioner's behalf, over Petitioner's objections. (Pet. at 10) But the facts do not support this outlandish claim. The trial transcript clearly shows that Petitioner originally wanted to plead guilty,[4] but then had second thoughts and decided against allocuting.[5] Petitioner points to no "clearly established Federal law, as determined by the Supreme Court of the United States," requiring that a defendant's

---

[4] "I will say yes to the counts of the indictment. Please sentence me so I can please leave this place." (Pet. Ex. E, Tr. at 76); "I'm going to plead guilty to the face of the indictment. I want to move on. I am 29 months in the Riverhead jail." (<u>Id.</u> at 82-83).

[5] "I am not guilty of the first seven counts, your Honor, no matter what it is. I made a mistake and, all right, I'll pay for it, but let me pay for what I am liable for." (<u>Id.</u> at 84-85.) (asking permission to plead guilty to the conspiracy count, but not the remaining counts).

counsel be disqualified because the defendant has second thoughts about pleading guilty during his allocution. 28 U.S.C. § 2254. This is especially true where, as apparently happened here, Petitioner did not even request his counsel's removal at the time of his alleged conflict with counsel.

Thus, Petitioner's ineffective assistance of counsel claims also lack merit.

VI. <u>Petitioner's Allegedly Defective Guilty Plea</u>

Petitioner also argues that his guilty plea was defective because it was obtained through "fraud, trickery, deceit, and coercion." In this regard, Petitioner argues: (1) his plea is obviously improper because Petitioner originally refused to plead guilty and "openly declared his innocence"; and (2) the prosecution wrongfully threatened to charge Petitioner's wife with conspiracy if Petitioner did not plead out. (Pet. at 11) Both of these arguments completely lack merit.

With respect to (1), there are many logical reasons why Petitioner could have changed his mind. For instance, as Petitioner pled guilty during the middle of his criminal trial, it is possible that Petitioner believed--based on the evidence presented--that he would likely be convicted and face a stiffer sentence if he did not plead. Indeed, if guilty pleas were considered void simply because a defendant at one point professed his innocence, they could scarcely be accepted at all. With

respect to (2), Petitioner again fails to point to any "clearly established Federal law, as determined by the Supreme Court of the United States," that precluded Suffolk County from using the threat of prosecuting his wife to persuade him to plead.  28 U.S.C. § 2254.  This is not surprising: although the Supreme Court has not ruled, every federal circuit court addressing this issue, including the Second Circuit, has found that there is no constitutional infirmity in the government agreeing to forego prosecuting a third party as part of a plea deal, provided that the government had a valid basis for pursuing charges against the third party in the first place, and the guilty plea is otherwise voluntarily entered into.  <u>See</u>, <u>e.g.</u>, <u>United States v. Marquez</u>, 909 F.2d 738, 741 (2d Cir. 1990) (a third-party benefit is only "one factor" in the "determination whether the plea is voluntarily entered"); <u>Miles v. Dorsey</u>, 61 F.3d 1459, 1468 (10th Cir. 1995); <u>United States v. Pollard</u>, 959 F.2d 1011, 1021 (D.C. Cir. 1992); <u>Politte v. United States</u>, 852 F.2d 924, 930 (7th Cir. 1988).  Here, other than Petitioner's unsupported claim that several witnesses would "lie" about his wife's presence at meetings where Petitioner and his co-defendants conspired to effect the robbery, Petitioner puts forth no evidence indicating that Suffolk County lacked a good faith basis to prosecute his wife.  (Pet. at 11); (Pet. Ex. F at 125) (trial transcript showing that Suffolk County intended to call witnesses who would testify about his wife's presence at meetings).

16

And, as seen during his allocution, Petitioner's guilty plea was otherwise knowing and voluntary. (Plea Tr. 129-31).

Petitioner also alleges that his guilty plea was defective because he did not know he would be sentenced to a period of post-release supervision. (Pet. at 13-14). Again, the facts disagree. The plea transcript clearly shows that the Court informed Petitioner that he would be subject to five years of post-release supervision. (Plea Tr. 128).

Thus, Petitioner has not set forth anything that would allow him to withdraw his guilty plea.

## VII. Petitioner's Sentencing Guidelines Claims

Petitioner also argues that his 2 1/3 year sentence for violating probation was excessive, exceeding the one year provided for by the "pre 9-1-98 sentencing guidelines." However, as the Second Appellate Division found, "[b]y waiving his right to appeal, [Petitioner] thereby waived his challenge to the excessiveness of his sentence." New York v. Scalercio, 10 A.D.3d at 697-98. Petitioner directs the Court to no "clearly established federal law" that would enable him to challenge the application of state sentencing guidelines when he himself waived the right to challenge his sentence.

## VIII. Petitioner's Non-Specific Constitutional Claims

Next, Petitioner argues that his rights "guaranteed under the U.S. Constitution Amendments Four, Five, Six, Eight, and

Fourteen, and under the New York Constitution Article 6, section four, subd. (k), and Article One, section 6" were "denied to him." (Pet. at 12). But this argument consists of nothing more than Petitioner's conclusory allegations, conjecture and speculation. At most, Petitioner alleges that his intended victim's extended family "were clearly a horrible influence in the prosecution of this case." (Pet. at 13). But Petitioner does not explain how this "influence" violated his Constitutional rights. Thus, Petitioner's non-specific constitutional claims also fail.

IX. <u>Petitioner's Post-Release Supervision Claims</u>

Finally, Petitioner attacks the period of post-release supervision included in his revised sentence. Petitioner initially claimed that post-release supervision, by itself, violates the Constitution's double jeopardy clause. (Pet. at 14). This argument is frivolous. Post-release supervision does not violate the double jeopardy clause because it is "part of the penalty for the initial offense." <u>Johnson v. United States</u>, 529 U.S. 694, 700, 120 S. Ct. 1795, 1800, 146 L. Ed. 2d 727 (2000).

In his purported Second Amendment to his Petition, Petitioner raises numerous other complaints concerning the imposition of post-release supervision. Petitioner claims that post-release supervision constitutes "cruel and unusual punishment." (Second and Final Am. for Writ of Habeas Corpus, at ¶ 6). But Petitioner points to no "clearly established Federal

law" to support this claim. 28 U.S.C. § 2254. Petitioner again claims that he was never informed that supervised release would be a condition of his plea. (Second and Final Am. for Writ of Habeas Corpus, at ¶ 5) But, once again, he is mistaken. (Plea Tr. 128). He then claims that New York's supervised release statute, N.Y. Penal L. § 70.45 violates the separation of powers doctrine. (Second and Final Am. for Writ of Habeas Corpus, at ¶ 6). But, although no federal court has specifically considered New York's statute, when considering other supervised release statutes, federal courts have uniformly rejected similar arguments. See, e.g., United States v. Mejia-Sanchez, 172 F.3d 1172, 1175 (9th Cir. 1999); United States v. Walter, 223 Fed. Appx. 810, 812 (10th Cir. 2007). Then, he claims that post-release supervision violates his right to a jury trial. Id. But, by pleading guilty, Petitioner waived his right to a jury trial. Next, he claims that supervised release constitutes a "bill of attainder." (Second and Final Am. for Writ of Habeas Corpus, at ¶ 6). But he apparently does not understand what the phrase "bill of attainder" means, as his criminal sentence was not a legislative act, much less one directed at him or a group of "easily ascertainable" individuals. See Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 521 n.4, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995) (internal citations and quotations omitted). He also claims that N.Y. Penal L. § 70.45 is void because it is not a "chargeable offense." (Second and Final Am.

19

for Writ of Habeas Corpus, at ¶ 14). But this is, of course, a non-sequitur, as § 70.45 was enacted to punish offenses proscribed by other statutes, not function as a criminal offense by itself. And, in supplemental briefing,[6] Petitioner argues that all sentences which include post-release supervision are unconstitutional under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). But Petitioner is mistaken: Booker concerned the application of the federal sentencing guidelines to federal prosecutions. Booker did not ban supervised release, either at the federal level or with respect to state prosecutions.

Petitioner does raise some issues that, arguably, are not completely frivolous on their face. In his October 17, 2008 filing, Petitioner argues that, as applied to him, the imposition of supervised release violates the double jeopardy clause because it was not included in his original sentence, but only in a modified sentence issued on April 1, 2008. Respondent concedes that the trial court made a "ministerial omission" when it originally failed to include a period of supervised release in Petitioner's sentence. (See Resp. Letter, dated March 11, 2009).

_____

[6] The Court has considered Petitioner's other objections to his sentence of post-release supervision (e.g., lack of subject matter jurisdiction because not listed in the Indictment, a supposed right to no post-release supervision stemming from the common law of contracts, etc.). These objections are all equally without merit.

But Respondent argues that the County was permitted to re-sentence Petitioner to correct this mistake.  See New York v. Sparber, 10 N.Y.3d 457, 471, 889 N.E.2d 459, 859 N.Y.S.2d 582 (2008) (holding that when a trial judge commits a "procedural error" by not including a period of supervised release when pronouncing sentence, the defendant's "sole remedy . . . is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement").[7]  This argument is somewhat beside the point.  On a § 2254 petition, the question is not whether the County complied with New York State law, but whether this application of New York State law violated Petitioner's federal rights.

No such violations occurred here.  The Supreme Court has never held that the double jeopardy clause is violated when a defendant is re-sentenced to correct a trial court's ministerial error.  Indeed, the Supreme Court has expressly permitted re-sentencings to correct such errors.  See Bozza v. United States, 330 U.S. 160, 166, 67 S. Ct. 645, 649, 91 L. Ed. 818 (1947) ("If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be

_____

[7] On June 30, 2008--after Petitioner was re-sentenced--N.Y. Penal L. § 70.85 became effective.  This statute partially negated Sparber by enabling courts to re-sentence defendants without the mandatory period of supervised release, "but only on consent of the district attorney."  What rights Petitioner may have under this statute, if any, is not for this Court to decide.

21

imposed at all. The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.") (citations omitted). And this is precisely what happened here. New York law required Petitioner to serve a period of supervised release upon the expiration of his prison sentence. N.Y. Penal L. § 70.45 (stating that "Each determinate sentence also includes, as a part thereof, an additional period of post-release supervision," and that, with certain designated exceptions, "The period of post-release supervision for a determinate sentence shall be five years"). At Petitioner's allocution, Justice Copertino specifically informed him that he would be subject to a five-year period of post-release supervision. (Plea Tr. 128). Then Justice Copertino erred by failing to include that statutorily mandated post-release supervision period in Petitioner's original sentence pronouncement. Just as in <u>Bozza</u>, there was no constitutional infirmity in correcting the error in this case.

In addition, Petitioner argues that the re-sentencing, which occurred more than six years after his original sentence, violated a New York statute which requires the prosecution to move to correct sentencing errors within a year of sentencing. <u>See</u> N.Y. C.P.L. § 440.40. This may be a valid New York state law claim, and Petitioner is, in fact, raising it in a pending state court appeal. But it is not a federal claim and, in any event, the pendency of

Petitioner's state law appeal means that Petitioner has not yet exhausted his state court remedies with respect to this claim.  See 28 U.S.C. § 2254(b)(1)(A); <u>Zarvela v. Artuz</u>, 254 F.3d 374, 380 (2d Cir. 2001) (on a § 2254 petition, a district court should dismiss unexhausted claims).

Thus, Petitioner's claims concerning his period of post-release supervision are also without merit.

X.   <u>Denial of Petitioner's Appeal Rights</u>

Petitioner also complains about being denied "proper appellate review" of his conviction.  (Pet. at 16).  But, by pleading guilty, Petitioner expressly agreed to waive "any and all basis [he] may have for an appeal, and any and all appellate rights."  (Plea Tr. 129-31).  Accordingly, this claim is also without merit.

XI.  <u>Petitioner's Declaratory Judgment Action</u>

Finally, Petitioner's Complaint seeking a declaratory judgment rehashes his arguments about the supposed illegality of New York Penal Law § 70.45 as applied to him (<u>i.e.</u>, double jeopardy, bill of attainder, separation of powers doctrine, etc.).  (Compl. ¶¶ 4, 8)  For all the reasons stated above, in the context of Petitioner's § 2254 petition, these arguments are without merit.  Thus, the Court dismisses his declaratory judgment action (originally filed under 09-CV-1248), <u>sua</u> <u>sponte</u>.

<u>CONCLUSION</u>

Petitioner's motions to amend his habeas Petition are
GRANTED, but his Petition itself is DENIED, and his Complaint is
DISMISSED <u>sua</u> <u>sponte</u>.  Petitioner's remaining motions, which seek
discovery, a preliminary injunction, and a temporary restraining
order, are DENIED AS MOOT.  A Certificate of Appealability is
DENIED.  The Clerk of the Court is instructed to mark this matter
as CLOSED.


                                   SO ORDERED


                                   /s/ JOANNA SEYBERT
                                   Joanna Seybert, U.S.D.J.

Dated:     September 30, 2009
           Central Islip, New York